## Jas. H. Roberts, Etc.,v. D. R. McKinney & Bros.

**Vendor and Purchaser—Action to Recover Purchase Money—Fraud and Misrepresentation as to Boundaries and Hostile Claims—Sufficiency of Allegations in Answer—Demurrer.**

Appellants in their answer, state that pending the treaty for the sale of the property, appellees fraudulently misrepresented to them the boundaries of the land and fraudulently concealed from them, that there was a hostile title and rival claim to fully one-third of he most valuable part of the lands, but they say they were not sufficiently advised then, to state whether the pretended or asserted claim to the land is valid or not; that they had been informed that it was not; but that the Red River Iron Manufacturing Company makes claim to a part of said land, which is to that extent a cloud upon their title and detrimental to them, which appellees fraudulently concealed from them and thereby induced them to make a contract which they would not have otherwise done, and they are informed that there are large outstanding liens upon the land which is superior to that of plaintiffs. They say that if they ever accepted the deed from appellee's it was done by mistake on their part, as to its purport and it contains exceptions that they did not fully understand.

Held, that in such a case it is well settled by numerous authorities in this state, that unless the vendee has been deceived and induced by the fraud of the vendor to accept the title he must pay the consideration.

**Pleadings—Amended Answer Containing Matters of Defense Set up in Former Suit Between Same Parts and Involving Same Issues, is no Bar.**

The appellees alleged in their petition that in April, 1870, a suit was pending, in the court below, in which they were plaintiffs and appellants were defendants in which the sufficiency to the title to the land and the quantity contained in the tract were directly in issue and that a consent judgment was rendered by which the appellants withdrew so much of their answer as set up a defect of title and deficit in quantity and to accept the deed then tendered them and that said deed was thereupon delivered to and accepted by them and these allegations are not controverted by the answer in this suit. But they allege in their amended answer, that if the deed was accepted by them, it was done by mistake, as to its purport, on their part and that the deed contains exceptions which were not fully understood.

Held, that the answer was insufficient and presented no bar to this action, and as the matter set up in the amended answer were being litigated between the same parties in another suit in the same court, the judge did not err in refusing to permit it to be filed.

APPEAL FROM ESTILL CIRCUIT COURT.

May 8, 1871.

Opinion by Judge Peters:

Appellees sold to appellants the property in Estill county known as the Cottage Furnace property at the price of $30,700, payable in instalments evidenced by notes, one of which matured on the 15th of April, 1870, for $6,000, and this suit in equity was brought in August, 1870, to coerce its payment by an enforcement of their asserted lien as vendors.

In the petition after alleging the maturity and non-payment of the note sued on appellees allege that at the April term, 1870, of said court, they had a suit pending against appellants in which the title and the boundary of the Cottage Furnace property were involved, and by an agreement of the parties, an order was entered of record in that suit that the defendants, now appellants, should withdraw their defense so far as the quantity and title to the lands attached to said Cottage Furnace were called in question by their answer, and agreed to, and did accept a deed then made and delivered to them by appellees, properly acknowledged, and that it had been recorded in the proper office, and they make a copy of the consent judgment aforesaid a part of their petition, from which it appears that appellants withdrew so much of their answer, counter-claim, and cross-petition as set up, and relied on any defect in appellees' title, and so much as sought compensation for any deficiency in the quantity of land sold, and accepted the deed for the property then tendered.

The residue of the judgment is not material to this controversy, and need not be recited.

The appellants in their answer, after admitting the note sued on was given for one of the instalments for the property named in the petition, state that *pending the treaty for the sale of the property,* appellees fraudulently misrepresented to them the boundaries of the land, and fraudulently concealed from them, that there was a hostile, and rival claim to fully one-third of the most valuable part of the land; but they say that they were not sufficiently advised *then* to state whether the pretended, or asserted claim to the land is valid or not; that they had been informed

that it was not. But that the Red River Iron Manufacturing Company makes claim to a part of said land, which is to that extent a cloud upon the estate, and detrimental to them, which appellees fraudulently concealed from them, and thereby induced them to make a contract which they would not otherwise have done.

That during the treaty for the sale appellees fraudulently represented that they owned mining privileges for five miles from the stack of the Cottage Furnace, which privileges would pass to them by the purchase of the furnace, which were great inducements to them to make the trade, but that the Red River Iron Manufacturing Company are now harrassing them with law law suits to prevent them from mining where appellees represented they would be entitled to mine and cut wood under their purchase of said property from them.

They further state that appellees made them a deed for the land on the 15th of April, 1870, in which they warranted the title to be good, but that the warranty was broken by the claim set up by the Red River Iron Manufacturing Company, which claims (they say) they do not assert are valid, but that they have been damaged greatly by them; that they could have sold the property for an advance on the original cost, but that purchasers have been detered by the claims of said company from purchasing their property, other injurious effects resulting from this claim are elaborated, but as they are not deemed material they will not be recited.

As a further defense they say they are *informed* that there are large outstanding liens upon the land held by Pierce, Ginter & Vaughn to the amount of about $10,000 superior in equity to that of plaintiffs, and if they are compelled to pay the debt sued on, and this prior lien be not removed, their property may be subjected to the payment or that debt also.

In answer to the allegation that appellees had made and delivered a deed for the property, to appellants which they accepted, they say if it ever was accepted by them, it was done by mistake on their part as to its purport; that it contains exceptions which they did not fully understand, and which appellees did not intend to make. That was interlined after it had been acknowledged, and was thereby vitiated; that the interlineations

are so frequent, and to such an extent that it is difficult to tell what it does convey and what it warrants.

They plead that they had paid $1,200 on the debt, and ask a credit for the same, and claiming damages for what they denominate fraudulent concealments, misrepresentations, and breaches of warranty on the part of appellees; they plead them by way of counter-claim and pray for a judgment for $5,000.

To the answer a demurrer was filed by appellees.

On hearing the court adjudged that the answer presented a partial defense so far as payment of a part of the debt before the suit was brought was relied upon, but as to the residue it presented no defense. Appellants then offered to file an amended answer, to which appellee objected on the ground that the same causes of action pleaded in said amended answer by way of counter-claim, were pleaded in a suit then pending in said court in which appellees were plaintiffs, and appellants were defendants, which appellants admitted to be true, and the court refused to permit the amended answer to be filed, to which appellants excepted and failing to make any further defense judgment was rendered against them, and they have appealed.

The first important question for consideration is to the facts stated in the original answer constitute a bar to the whole action.

The uncontroverted allegations of the petition show that possession of the estate has been delivered, the contract executed, the conveyance with warranty of title made and accepted by appellants, and they do not allege that they have been evicted, nor that appellees are insolvent, or non-residents.

In such a case it is well settled by numerous authorities in this State that unless the vendee has been deceived, and induced by the fraud of the vendor to accept the title, he must pay the consideration, or price of the land. *Vance vs. House's Heirs,* 5 B. M. 537; *Simpson and Others vs. Hawkins & Cochran,* 1 Dana 308; *Rankins & Co. vs. Timberlake,* 6 Mon. 225; *Payne vs. Cabell,* 7 Mon. 198.

This conclusion leads necessarily to an examination of the facts stated in the answer to ascertain whether they are sufficient to defeat the action, or to authorize the relief sought by the counter-claim on account of fraud.

In determining this question it is proper to understand the precise state of the pleading in reference to it. Appellees in their petition allege that in April, 1870, a suit was pending in the court below in which they were plaintiffs, and appellants, defendants in which the sufficiency of the title to the land, and the quantity contained in the tract were directly involved, and at the April term of the last named year of said court a consent judgment was rendered, by which appellants withdraw so much of their answer and counter-claim as set up a defect of title to and deficit in the quantity of land and to accept the deed then tendered to them, and filed in the suit, and that said deed was thereupon delivered to, and accepted by them, and a copy of said judgment was filed, from which the facts appear appear as alleged, and they are not controverted by the answer. They say if it ever was excepted by them, it was done by mistake as to its purport on their part, that the deed contains exceptions which were not fully understood, and which the plaintiffs did not intend to make, as they are informed and charge. That they knew as much about the title, and the boundary of the land when they consented to the judgment referred to, and accepted the deed as they did when they filed their answer in this case can -not be doubted. They do not allege that they had made and discovery of facts since they accepted the deed, nor do they charge any fraud on the part of appellees at the time the consent judgment was rendered, or when they accepted the deed; but all the allegations of fraud refer to the time when they were negotiating about the sale and purchase of the property; and consisted in misrepresenting their title to the land, and the boundary of the tract which were satisfactorily adjusted when the deed was accepted as we must assume. And even if that assumption is not authorized, the consent judgment will bar them of any relief for the same matters of defense set up and adjudged in that case until it is set aside, or reversed. And as to the mistake alleged, if they did not understand the purport of the deed it must have been their own fault, since no fact is stated which can be construed to impart any wrong to appellees.

It results form the foregoing that the answer except so far as a partial payment of the debt was pleaded was insufficient, and presented no bar to the action, and as the matters set up in the

amended answer were being litigated between the same parties in another suit in that court, the judge did not err in refusing to permit it to be filed.

But there is an error in the final judgment prejudicial to appellants for which there must be a reversal. After stating that the matters set up in the answer are insufficient to constitute a defense to the action except as to the $1,200, pleaded as partial payment, the court proceeds to render judgment for $6,000, the full amount of the note sued on with interest from the date of its maturity, and after ordering land to be sold to pay the debt interest and costs including the commissioner's allowance for selling, and prescribing the terms and manner of making the sale, adds these words: "The commissioner will report his proceedings under this judgment to the next term of this court for its approval, and the cause, including the twelve hundred dollars excepted out of this judgment, is continued until the next term of this court." The judgment is rendered for the whole $6,000, and nothing said of any exception therefrom until the clause for the continuance is reached, and then the language is that the case, *including the twelve hundred dollars excepted, etc.,* is continued. According to the terms and meaning of the judgment it must be for the whole $6,000. The commissioner is required to sell for that sum and no less, and having embraced the $1,200 the bonds of the purchaser must secure that sum as well as the residue of the debt and the continuance of the cause would be only to receive, and adjudicate on the Master's report. Indeed, it may be very seriously doubted whether the court at a subsequent term would have any power to try the issue as to the payment of $1,200. He should have rendered judgment for $4,800, the amount not controverted by the answer and continued the cause to try the issue as to the payment of the $1,200. Wherefore the judgment is reversed and the cause is remanded to render judgment and for further proceedings consistent herewith.

*Turner, Caperton, Chenault, for appellant.*

*Riddle, for appellee.*